CONTINENTAL OIL COMPANY,
Appellant,

v.

Sadie Alleen SIMPSON et al., Appellees.

No. 9099.

Court of Civil Appeals of Texas,
Amarillo.

Aug. 15, 1980.

Rehearing Denied Sept. 10, 1980.

Gibson, Ochsner & Adkins, Mac W. Hancock, III, Amarillo, for appellant.

Gassaway, Gurley, Sheets & Mitchell, Jody G. Sheets, Borger, Jones, Trout, Flygare, Moody & Brown, Lubbock, for appellees.

REYNOLDS, Chief Justice.

In this action to recover monetary damages for the wrongful death of Samuel Virgil Simpson, the jury's answers to the submitted special issues failed to convict defendant Continental Oil Company, but convicted Simpson, of negligence proximately causing the occurrence from which his death resulted. The trial court determined that the failure of Continental to comply with a provision of tariff rules promulgated by the Railroad Commission of Texas was negligence per se and found as a matter of law, contrary to the jury's failure to factually find, that such noncompliance was a proximate cause of the occurrence. Then the court, ignoring the jury's findings that an act of Simpson was negligence which proximately caused the occurrence, rendered judgment against Continental for $248,272.97, the damages fixed by the jury. Concluding that the failure to comply with the provision of the commission's tariff rules is not negligence per se, we reverse and render.

Since the late 1940s, Simpson had operated his own trucking business in the Texas and Oklahoma panhandle areas. He owned several tractors and trailers, operating one rig as a full–time driver hauling refined petroleum products for, and under a lease arrangement with, Groendyke Transport, Inc. Continental owned a bulk plant facility located at Mobeetie, Texas, and operated by its employee–agent Lester Leonard.

On 23 March 1974 and in response to an order by Leonard, Simpson arrived at Continental's Mobeetie facility with a "split load" of Conotane and regular gasoline. Leonard was absent and Simpson was met by Joe Darnell, a Continental plant worker. Simpson, who had not been to the plant before, tied his truck unloading hose to the middle one of three lines for unloading products into the facility. He was told by Darnell what valves in the facility system to open and close to unload the Conotane and to change to unload the regular gasoline. Following Darnell's instructions, Simpson began unloading the Conotane. Darnell observed that the unloading was normal, talked with Simpson for "a little bit" and then left.

After an unfixed interval of time, during which Simpson had finished unloading the Conotane and changed his truck valves to off–load the regular gasoline, an explosion occurred, followed by a fire. The explosion and fire resulted, according to a jury finding, when Simpson pumped gasoline into a closed system, i. e., the valve was closed. Simpson suffered burns over eighty percent of his body and death later ensued.

The wrongful death action was brought by Simpson's surviving widow, Sadie Alleen Simpson, and the sons of their marriage, Allen Simpson, Nealby D. Simpson, Rossie R. Simpson and Lloyd Gail Simpson. The Simpsons named Continental Oil Company and Lester Leonard as defendants, but non-suited Leonard prior to the trial. Truck Insurance Exchange, Inc., intervened, claiming subrogation rights to amounts it had paid to or on behalf of the Simpsons under policies of workers' compensation and property damage insurance it had issued.

During the course of the trial, the Simpsons offered Supplement No. 13 to Railroad Commission of Texas Motor Freight Commodity Tariff No. 7–L. Continental objected. After the Simpsons qualified their offer to which Continental objected, the court admitted the entire document of four pages. However, the admission was conditioned, as we understand the court's ruling, that paragraphs (4), (5) and (6) were admitted without limitation but only paragraphs (5) and (6) were to be displayed to the jury, and the remainder of the document was limited to the purpose of demonstrating that it is a complete document.

As the document bears on the appeal, page 1 of Supplement No. 13 has this language:

> Except as otherwise provided, the rates and charges in this Supplement are subject to the surcharge provision of Item 1 of this tariff.

SUPPLEMENT NO. 13

\*   \*   \*   \*   \*   \*

TO RAILROAD COMMISSION OF TEXAS MOTOR FREIGHT COMMODITY TARIFF NO. 7–L

Containing Rates, Rules, Regulations and Charges Governing The Transportation Of

PETROLEUM AND PETROLEUM PRODUCTS AS DESCRIBED HEREIN, IN BULK, IN TANK TRUCKS, MOVING VIA COMMON CARRIERS, LIMITED COMMON CARRIER MOTOR CARRIERS, AND SPECIALIZED MOTOR

CARRIERS, AND AS MINIMUM VIA CONTRACT MOTOR CARRIERS

Between Points in Texas

\*   \*   \*   \*   \*   \*

Page 2 of the Supplement contains, in part, the following:

RULES

*Pick–Up and Delivery Service*

Rates herein include Pick–Up and delivery service at point of origin and at designation of the commodities transported, subject to the following provisions:

\*   \*   \*   \*   \*   \*

(2) The rates herein do not include the cost of loading into and/or unloading from the transporting vehicle. When the service is performed by carrier's power, charge of $.0020 per gallon for loading and $.0020 per gallon for unloading will be made, which shall be in addition to the applicable rate; except as provided in Paragraph (6) below.

\*   \*   \*   \*   \*   \*

(4) Inlets and outlets of tank trucks shall be sealed by the shipper, except when loading is performed under the provisions of paragraph (6) below the seals shall be furnished by the shipper and the carrier shall apply them.

(5) Consignee or his agent shall designate the line to which the unloading hose is to be coupled, the coupling to be done by the carrier.

(6) In the loading or unloading of commodities, operation of the motor vehicle will be performed by the carrier. Equipment of storage facilities to be operated by the shipper or consignee or their agent, except by agreement loading may be performed by the carrier with automatic metering equipment furnished by shipper; and except by agreement carrier may operate consignee's unloading facilities.

\*   \*   \*   \*   \*   \*

The special issues submitted to the jury were designed to inquire about acts or omis-

sions to act on the part of both Continental and Simpson, negligence and proximate cause, except for two instances. One instance is material to the appeal. The noticeable instance is special issue no. 6, having its genesis in paragraph (6) of Supplement No. 13 and reading, with the jury's answers, thusly:

SPECIAL ISSUE NO. __6__

A. Do you find from a preponderance of the evidence that Continental Oil Company acting through its agents, servants, or employees failed to operate the equipment of the storage facility located at Mobeetie, Texas, at the time Samuel Virgil Simpson was unloading at the facility?

ANSWER "It failed" or "It did not fail"

ANSWER: *It failed*

In the event you have answered Special Issue No. 6 A "It failed" then answer B; otherwise, do not answer B.

B. Do you find from a preponderance of the evidence that Continental Oil Company acting through its agents, servants, or employees did not have an agreement which allowed Samuel Virgil Simpson to operate the equipment of the storage facility located at Mobeetie, Texas, on August 23, 1974?

ANSWER "It did not have an agreement" or "It did have an agreement"

ANSWER: *It did not have an agreement*

In the event you have answered Special Issue No. 6 B "It did not have an agreement" then answer C; otherwise do not answer C.

C. Do you find from a preponderance of the evidence that said failure, if you have so found, was a proximate cause of the fire and explosion in question?

ANSWER "We do" or "We do not"

ANSWER: *We do not*

Continental objected to the submission of special issue no. 6 for the reasons, among others, that it attempts to submit a theory of negligence per se based upon a tariff of the commission and, in essence, that it does not require a finding of negligence, a requirement for liability. All objections were overruled.

By its answers to the special issues inquiring of act, negligence and proximate cause, the jury failed to find either the commission of the act or the omission to act inquired about; or, finding the commission of the act or the omission to act, failed to find that it was negligence; or, finding both, failed to find that the negligence was a proximate cause of the occurrence, with one exception. Answering special issue no. 13, the jury found that Simpson "operated his pump into a system which was a closed system by virtue of a closed valve," such action was negligence and a proximate cause of the occurrence in question. Having found that only Simpson committed a negligent act proximately causing the occurrence, the jury, adhering to the court's instruction, did not answer the negligence apportionment issue. In short, the jury's verdict was that Simpson's death was caused solely by his own negligence.

Continental moved for a take–nothing judgment on the verdict. The Simpsons and Truck Insurance Exchange moved the court for judgment in the amount of damages fixed by accepting the answer to special issue no. 6A as setting forth negligence per se by Continental, by disregarding the answer to 6C and expressly finding the proximate cause inquired about there as a matter of law, and by disregarding the answers to special issue no. 13 because it is an immaterial issue.

The court, reciting that the Simpson's and Truck Insurance Exchange's motion is granted, specifically disregarded the jury's answer to special issue no. 6C and substituted the finding of proximate cause as a matter of law and, without mentioning the jury's answers to special issue no. 13, rendered judgment. The judgment decrees that the Simpsons and Truck Insurance Exchange recover from Continental the $248,-272.97 damages fixed by the jury, apportioned in amounts stated in the judgment.

Continental's twenty–one–point appeal has evoked two counter–points and eight cross–points from the Simpsons and Truck

Insurance Exchange as appellees. The initial joinder is on the primary question whether Continental's failure to operate its facility equipment in accordance with paragraph (6) of Supplement No. 13 constitutes negligence per se.

The tort concept of negligence per se is expressed in Restatement (Second) of Torts § 288B (1965) in these words:

(1) The unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself.

The rule has been adopted by the Supreme Court. *Southern Pacific Company v. Castro,* 493 S.W.2d 491, 497 (Tex. 1973). However, we have not been cited to any authority, and none has been found in our research, which expressly adopts or rejects paragraph (6) of Supplement No. 13 as defining the standard of conduct of a reasonable person. Of necessity, then, our determination of the primary question must rest upon a process of reasoning from law which tends to shed light on it.

■ Most of the authorities speaking to the negligence per se rule address its application to a legislative enactment. But, inasmuch as administrative rules and regulations ordinarily are construed like statutes, *Lewis v. Jacksonville Build. & Loan Ass'n,* 540 S.W.2d 307, 310 (Tex. 1976), the rules of construction which apply to statutes apply with equal force to administrative rules and regulations. *Texarkana & Ft. S. Ry. Co. v. Houston Gas & Fuel Co.,* 121 Tex. 594, 51 S.W.2d 284, 287 (1932). Hence, although most of the authorities hereafter cited for rules of construction speak of statutes, the citations are pertinent to, and are given for, the application of the same principles to administrative rules and regulations.

■ The availability of the negligence per se rule does not mean that it is applied obdurately to the violation of every administrative rule or regulation. Neither does the mere fact that an administrative agency promulgates a rule or regulation mean that the courts must accept it as a standard for civil liability. *Carter v. William Som-*

*merville and Son, Inc.,* 584 S.W.2d 274, 278 (Tex. 1979). Indeed, the language of the rule comports with the principle that the power of adopting or rejecting a standard of conduct rests with the civil courts. *Rudes v. Gottschalk,* 159 Tex. 552, 324 S.W.2d 201, 205 (1959). *A fortiori,* the concept of negligence per se becomes viable in the cause at bar only if the courts adopt paragraph (6) of the commission's tariff Supplement No. 13 as defining the standard of conduct of a reasonably prudent person. *Moughon v. Wolf,* 576 S.W.2d 603, 604 (Tex. 1978).

■ At least since *Missouri, K. & T. Ry. Co. of Texas v. Saunders,* 101 Tex. 255, 106 S.W. 321 (1908), Texas has followed the principle that the courts will not adopt an administrative rule or regulation as a standard for negligence unless a purpose of the rule is to afford protection to the class of persons to which the injured party belongs against the hazard involved in the particular case. *Carter v. William Sommerville and Son, Inc., supra,* at 278. Thus, the prime thing here is to ascertain the intent of the commission, *i. e.,* the purpose(s) of paragraph (6), as fairly expressed in its promulgation. *Texarkana & Ft. S. Ry. Co. v. Houston Gas & Fuel Co., supra,* at 287. And the intention should be ascertained from the entire document and not from isolated portions thereof. *Merchants Fast Motor Lines v. Railroad Com'n,* 573 S.W.2d 502, 505 (Tex. 1978).

Nevertheless, appellees indicate indirectly, sans citation of authority, that our consideration of the primary question is circumscribed by the language of paragraphs (4), (5) and (6) inasmuch as the remainder of Supplement No. 13 is outside the scope of our review because it was received in evidence for the limited purpose of showing a complete document. Inherent in the indication is the subtle incongruity that the commission has established a standard of conduct, a violation of which is negligence per se, which is so obscure that no knowledge of it exists until it becomes unconditional evidence. Be that as it may, we do not accord validity to the indication for a more substantial reason.

Early, it was expressed that the courts are not required to take judicial cognizance of the acts of the Railroad Commission of Texas. *Thompson v. San Antonio & A.P. Ry. Co.*, 11 Tex.Civ.App. 145, 32 S.W. 427 (San Antonio 1895, no writ). This expression became the basis for the more positive pronouncements that courts do not take judicial notice of the commission's acts, *Barron v. Marusak*, 359 S.W.2d 77, 83–84 (Tex.Civ.App.–Austin 1962, no writ), or its rules. *Young v. McGill*, 473 S.W.2d 672, 673 (Tex.Civ.App.–El Paso 1971, no writ); *Byrd v. Trevino–Bermea*, 366 S.W.2d 632, 635 (Tex.Civ.App.–Austin 1963, no writ). Logically, these pronouncements flow from the premise that the trial court was not requested to judicially notice the commission's acts and rules and, thereby, was not afforded the opportunity to examine the source material. *Cf. Sparkman v. Maxwell*, 519 S.W.2d 852, 855 (Tex. 1975) (holding that an appellate court is naturally reluctant to take judicial notice of regulations promulgated by state agencies where the trial court was not requested to do so and was not given an opportunity to examine the necessary source material, but this does not mean the court would refuse to take judicial notice where necessary to avoid an unjust judgment).

■ Here, however, the very source material, *i. e.*, Supplement No. 13, which appellees indicate we may not notice, was before the trial court, unchallenged as to its accuracy and available for examination. It was offered on the primary question. The circumstance of a portion of it being received for the limited purpose of showing a complete document is immaterial, for the source from which a fact is judicially noticed is not evidence to establish the fact and is not subject to the rules of evidence. 1 R. Ray, Texas Law of Evidence § 152 (Texas Practice 3 ed. 1980). Indisputably, the parties expected, albeit with contrary expectations, that the court would notice the legal affect of a provision of Supplement No. 13. To ascertain that effect, it is the duty of the court to look to the entire document. *Texarkana & Ft. S. Ry. Co. v. Houston Gas & Fuel Co.*, supra, at 287. So,

the entire document was the proper and necessary source material for the trial court to notice on the primary question and, and such, we will notice it, *A. & M. College of Texas v. Guinn*, 280 S.W.2d 373, 377 (Tex. Civ.App.–Austin 1955, writ ref'd n.r.e.), even though the record is silent as to the attention it was given by the trial court. *Cf. Harper v. Killion*, 162 Tex. 481, 348 S.W.2d 521, 523 (1961) (holding that an appellate court may judicially notice a fact that the trial court can judicially notice notwithstanding the trial court was not requested to do so and did not formally announce that it had done so).

■ From our perusal of Supplement No. 13, we do not believe it reasonably can be said that a purpose of paragraph (6) was to protect against an explosion and fire such as occurred in the cause at bar. The document itself is designed as an addition to a motor freight commodity tariff, prescribing the provisions which invoke specified rates connected with the transportation of petroleum commodities. By the very language of Supplement No. 13, paragraph (6) is but one rule provision which, depending upon the manner of loading or unloading the commodities, merely influences the rate. This is manifested by the prefatory words under the heading "RULES" stating that the rates specified are "subject to the following provisions," one of which is paragraph (2) and another of which is paragraph (6). Paragraph (2) fixes charges, additional to those for the transportation rates, for the use of the carrier's power in loading and unloading, except as otherwise agreed pursuant to paragraph (6). A reading of paragraph (6) reveals immediately that it does not set forth a level of *required* conduct; its provisions are optional rather than mandatory. At most, the provisions prescribe a standard for a purpose–*i. e.*, the determination of rates–other than protection against the hazard Simpson encountered. Moreover, though not controlling, Supplement No. 13 has no provision for the fixing of civil liability in a civil action for failure to comply with the provisions of paragraph (6). If a purpose of paragraph (6) were to guard

against the hazard of explosion and fire, there would be no reason to, as it does, equate its operative effect with the rate charged.

On balance, then, we conclude that the commission intended paragraph (6) as a determinant of the loading and unloading rate charged, if any, and not as a standard by which civil liability is to be adjudged. It follows that the paragraph did not have as its purpose the affording of protection against the hazard involved in the cause at bar. We hold, therefore, that a failure to comply with the provisions of paragraph (6) of the commission's Supplement No. 13 does not constitute negligence per se.

By their pleadings, the Simpsons undertook one of the burdens placed on them by the Wrongful Death Statute, Texas Revised Civil Statutes Annotated art. 4671, et seq. to prove that Simpson's death was caused by the negligence of Continental. *Grieger v. Vega*, 153 Tex. 498, 271 S.W.2d 85, 89 (1954). In the absence of negligence per se, the issue of negligence is one of fact for the jury's determination. *Texas & P. Ry. Co. v. Murphy*, 46 Tex. 356, 366 (1876). That issue was not submitted to the jury in connection with special issue no. 6, and the objection by Continental to its omission from the charge precludes any deemed finding of negligence by the trial court. *Petroleum Anchor Equipment, Inc. v. Tyra*, 419 S.W.2d 829, 834 (Tex. 1967). The consequence is that appellees waived a finding on the controlling issue of negligence, thereby failing to meet the burden placed on them by law. *Dittberner v. Bell*, 558 S.W.2d 527, 534 (Tex.Civ.App.–Amarillo 1977, writ ref'd n.r.e.). Without the establishment of negligence on the part of Continental, the judgment rendered is erroneous, for no judgment can be rendered in a negligence cause of action against a non–negligent defendant. *Bebee v. Williams*, 431 S.W.2d 773, 774 (Tex.Civ.App.–El Paso 1968, writ ref'd n.r.e.).

In conformity with what we have written, Continental's first seven points of error are sustained. Our resolution of the primary question, requiring a reversal and rendition, pretermits a discussion of the remaining points and cross–points of error directed to other matters.

The judgment of the trial court is reversed. Judgment is here rendered that plaintiffs Sadie Alleen Simpson, Allen Simpson, Nealby D. Simpson, Rossie R. Simpson and Lloyd Gail Simpson take nothing by their wrongful death action against Continental Oil Company, and that intervenor Truck Insurance Exchange, Inc., take nothing by its intervention.

Seventy–six (76%) percent of the costs are adjudged against plaintiffs Sadie Alleen Simpson, Allen Simpson, Nealby D. Simpson, Rossie R. Simpson and Lloyd Gail Simpson, and twenty–four (24%) percent of the costs are adjudged against intervenor Truck Insurance Exchange, Inc. Tex.R. Civ.P. 448.