**BORDEN, INC., Appellant,**

v.

**David L. PRICE and Mary Price, Appellees.**

No. 07–96–0198–CV.

Court of Appeals of Texas, Amarillo.

Feb. 13, 1997.

Rehearing Overruled March 13, 1997.

Stewart R. Werner, Mullin Hoard & Brown, L.L.P., Amarillo, for appellees.

S. Tom Morris, Vance Edward Ivy, Gibson Ochsner & Adkins, L.L.P., Amarillo, for appellants.

Before BOYD, C.J., and DODSON and QUINN, JJ.

QUINN, Justice.

Borden, Inc. (Borden) appealed from a monetary judgment entered in favor of David L. Price (Price) and Mary Price. In eight points of error, it asked whether the trial court erred in 1) refusing to instruct a verdict holding Price comparatively negligent in excess of 50%, 2) overruling various objections to the charge, 3) improperly instructing

the jury on the question of legal excuse, 4) improperly instructing the jury on the question of emergency, 5) instructing the jury in a manner which informed it of the effect of its answers, 6) denying new trial because the jury's failure to hold Price comparatively negligent was "against the great weight of the evidence and . . . conclusively wrong," 7) denying new trial because the finding of negligence against Borden's employee was "against the great weight of the evidence," and 8) denying new trial because the damages awarded were "excessive and manifestly unjust." We reverse and remand the cause for new trial.

### Background

On August 19, 1991, around mid-day, Price exited from a truck driven by Charles Allen. At the time, the vehicle had pulled over on the north shoulder of the west bound lanes of Interstate 40 in Amarillo. The two had been driving in a westerly direction and came upon a couch cushion lying ahead of them in the lane adjacent to the north shoulder. They "curved" into the center lane, passed it, and then spontaneously decided to remove it. Consequently, they stopped on the shoulder, and Price left the vehicle, used the shoulder of the highway to walk back to where the cushion lay, entered the lane, and picked up the cushion. However, as he returned to the shoulder, he was struck by a Borden's dairy truck driven by Damon Brown (Brown). The truck had gone atop the shoulder because a minivan in front of it had slowed to avoid the couch cushion.

### Point of Error Two

■ Borden contended that the trial court erred in instructing the jury that violations of sections 54A, 55(b), 60(a), 61(a), and 166(b) and (c) of article 6701d of the Texas Revised Civil Statutes constituted negligence per se. The instructions read:

Section 54A of Article 6701d, Texas Civil Statutes, provides a driver of a motor vehicle may operate a vehicle on an improved shoulder to the right of the main traveled portion of the roadway as long as necessary and when the operation can be done *in safety* under the following circumstances: (1) to stop, stand or park; (2) to overtake and pass another vehicle that is slowing or stopped on the main traveled portion of the highway disabled; or (3) at any time to avoid a collision; and, failure to comply with this law is negligence in itself, unless excused;

Section 55(b) of Article 6701d, . . . provides that a driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement *in safety*. In no event shall such movement be made by driving off the main traveled portion of the roadway except as provided in Section 54A; and, failure to comply with this law is negligence in itself, unless excused;

Section 60(a) of Article 6701d, . . . provides that the driver of a vehicle shall drive as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made *with safety*; and, failure to comply with this law is negligence in itself, unless excused;

Section 61(a) of Article 6701d, . . . provides that the driver of a motor vehicle shall, when following another vehicle, maintain an assured clear distance between the two vehicles, exercising *due regard* for the speed of such vehicles, traffic upon and conditions of the street or highway, so that such motor vehicle can *be safely* brought to a stop without colliding with the preceding vehicle, or veering into other vehicles, objects or persons on or near the street or highway; and, failure to comply with this law is negligence in itself, unless excused; and,

Section [sic] 166(b) and (c) of Article 6701d, . . . provide that a driver of a motor vehicle must operate a motor vehicle at a speed that is *reasonable and prudent* under the conditions and having regard to the actual and potential hazards then existing; and at a speed necessary to avoid colliding with any person, vehicle or other conveyance on the highway; and, failure to comply with this law is negligence in itself,

unless excused.[1]

(Emphasis added). By including in each the phrase that the "failure to comply ... is negligence in itself, unless excused," the court purportedly misstated that law. That is, the duties imposed were not absolute but conditioned upon proof that Brown failed to act "in safety," *Tex.Rev.Civ. Stat. Ann.* art. 6701d, §§ 54A & 55(b) (Vernon Supp.1986), "with safety," *id.* at § 60(a), "safely," *id.* at § 61(a), and "reasonabl[y] and prudent[ly]." *Id.* at § 166(b) & (c). And, since proving that its employee failed to so act depended upon whether he failed to abide by the "common-law test of the reasonably prudent man," *see Missouri–Kansas–Texas R.R. Co. v. McFerrin,* 156 Tex. 69, 291 S.W.2d 931, 935–36 (1956), a violation of the statutes could not be negligence per se, according to Borden. We agree.

As the Texas Supreme Court stated long ago, "[n]egligence per se is a tort concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person." *Carter v. William Sommerville & Son, Inc.,* 584 S.W.2d 274, 278 (Tex.1979); *accord Southern Pacific Co. v. Castro,* 493 S.W.2d 491, 497 (Tex.1973) (adopting the *Restatement (Second) of Torts* definition that negligence per se consists of an unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man); *Continental Oil Co. v. Simpson,* 604 S.W.2d 530, 534 (Tex.Civ. App.—Amarillo 1980, writ ref'd n.r.e.) (holding that the statute or regulation must, in effect, prescribe a standard of conduct before its violation may be considered negligence per se). Implicit therein is the concept that by declaring in a statute that the public must do or refrain from doing a specific act, the legislature has effectively characterized the commission of the act as conduct which a reasonably prudent person would not do. *See* 3 F. Harper, F. James & O. Gray, *The Law of Torts* § 17.6 at 621 (1986) (stating that when the community, *i.e.,* legislature, has officially determined that certain risks are foreseeable and are to be avoided by undertaking a prescribed course of action, no reasonable person would thereafter fail to undertake the prescribed course); *see Missouri Pacific R.R. Co. v. American Statesman,* 552 S.W.2d 99, 103 (Tex.1977) (stating that where the legislature has declared *that a particular act shall not be done,* it fixes a standard of reasonable care the unexcused violation of which constitutes negligence per se). And, in doing so, it obviated the need to ask a jury to pass upon the actor's prudence. *Id.; Eisenhuth v. Moneyhon,* 161 Ohio St. 367, 119 N.E.2d 440, 443 (1954) (quoting *Swoboda v. Brown,* 129 Ohio St. 512, 196 N.E. 274 (1935)). Instead, the trial court merely has the fact finder decide if the tortfeasor committed the act proscribed by the statute and if the act proximately caused injury. *Moughon v. Wolf,* 576 S.W.2d 603, 604–05 & nn. 2 & 3 (Tex.1978).[2] So, simply put, if violation of the duty imposed by a statute is dependant upon a *jury* determining if the act was unreasonable or imprudent, then the statute cannot be one involving negligence per se. *Cudworth v. South Texas Paisano Const. Co.,* 705 S.W.2d 315, 317 (Tex.App.—San Antonio 1986, writ ref'd n.r.e); *Renfroe v. Ramsey,* 477 S.W.2d 648, 650 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ); *Hemphill v. Meyers,* 469 S.W.2d 327, 328 (Tex.Civ.App.—Austin 1971, no writ); *Schwab v. Stewart,* 387 S.W.2d 939, 942 (Tex.Civ.App.—Amarillo 1964, writ ref'd n.r.e.).

Moreover, the absolute versus conditional duty dichotomy mentioned by Borden is nothing more than a restatement of the foregoing rule. That is, by conditioning its breach upon proof that the defendant failed to act safely, with safety, or prudently, the statutes imposed upon the complainant the burden of proving that his opponent acted

---

1. Other than for the passage indicating that a violation constituted negligence per se, each instruction accurately paraphrased the respective statutes cited therein. And, the parties conceded as much.

2. For instance, the court asks the jury to determine if the defendant failed to keep his vehicle completely within the right half of the roadway and if her failure to do so proximately caused the accident. *Moughon v. Wolf,* 576 S.W.2d 603, 604 & n. 3 (Tex.1978).

unreasonably. *Missouri–Kansas–Texas R.R. Co. v. McFerrin*, 291 S.W.2d at 935–36; *Cudworth v. South Texas Paisano Const. Co.*, 705 S.W.2d at 317 (holding that whether a driver operated his vehicle on an improved shoulder "in safety," as per art. 6701d, § 54A of the Texas Revised Civil Statutes, depends upon whether he acted reasonably under the common law); *Renfroe v. Ramsey*, 477 S.W.2d at 650 (holding that whether a driver "safely" entered an intersection, as per art. 6701d, § 71(c) of the Texas Revised Civil Statutes, depends upon whether he acted prudently); *Hemphill v. Meyers*, 469 S.W.2d at 328 (holding that whether a driver failed to yield the right of way, as per art. 6701d, § 74 of the Texas Revised Civil Statutes, depends upon whether he acted negligently or unreasonably); *Schwab v. Stewart*, 387 S.W.2d at 942 (holding that whether a driver failed to exercise "due regard" for others so that his vehicle could "safely" stop, as per art. 6701d, § 61(a) of the Texas Revised Civil Statutes, depends upon whether he acted imprudently).[3] So, the duties imposed by each statute are conditioned upon a jury determining whether the accused acted unreasonably. *Id.* Given this, we must conclude 1) that the legislature itself did not declare, as unreasonable per se, the commission of the specific acts contemplated by the statute and 2) that a violation of the particular statutes is not negligence per se. *Id.;* *Lester v. John R. Jurgensen Co.*, 19 Ohio Misc. 119, 400 F.2d 393, 395–96 (6th Cir.1968) (holding that the trial court did not err by refusing to charge on negligence per se since the standard of conduct mandated by statute was one of reasonable care); *Bailey v. Lenord,* 625 P.2d 849, 855–56 (Alaska 1981) (holding that negligence per se was uninvolved since the standard of conduct demanded by the statute was one of reasonableness); *Eisenhuth v. Moneyhon, supra* (holding that the trial court erred in charging the jury that the violation of the statute constituted negligence per se since the standard of conduct imposed was one of reasonable prudence); *compare, Moughon v. Wolf,* 576 S.W.2d at 604 (illustrating that the matter of negligence is not submitted when the statute imposes an absolute duty, that is, one not dependant upon a finding that the defendant acted unreasonably).

■ In sum, the trial court erred by misstating the law when charging the jury that a violation of art. 6701d, §§ 54A, 55(b), 60(a), 61(a), and 166(b) and (c) was negligence per se.[4] Moreover, the error was harmful since an explanatory instruction misstating the law cannot be expected to produce an accurate verdict. *Line Enterprises, Inc. v. Hooks & Matteson Enterpr., Inc.,* 659 S.W.2d 113, 117 (Tex.App.—Amarillo 1983, no writ); *Sanders v. Davila,* 593 S.W.2d 127, 130 (Tex.Civ. App.—Amarillo 1979, writ ref'd n.r.e.). Also, the scenario at bar could have easily con-

---

3. In denying writ, no reversible error, the Texas Supreme Court said that to the extent we suggested that no violation of any provision of art. 6701d could amount to negligence per se, it did not necessarily agree. *Schwab v. Stewart,* 390 S.W.2d 752, 752 (Tex.1965). A fair reading of our opinion reveals no such implication. We merely stated that because liability under § 61(a) of article 6701d was conditioned upon failing to act safely, *i.e.* reasonably prudent, the complainant was obligated to request an issue on negligence. *Schwab v. Stewart,* 387 S.W.2d 939, 942 (Tex.Civ.App.—Amarillo 1964, writ ref'd n.r.e.). He could not simply have the jury determine that Stewart followed too closely and then argue negligence per se. Nothing was said about those sections of 6701d which lacked similar conditions.

4. We acknowledge that some authority exists which supports Price's proposition that by making a common law standard of conduct statutory, a violation of the statute results in negligence per se. *See e.g., Southern Pacific Co. v. Castro,* 493 S.W.2d 491, 497 (Tex.1973); *Missouri–Kansas–Texas R.R. Co. v. McFerrin,* 156 Tex. 69, 291 S.W.2d 931, 939 (1956). Yet, if simply incorporating the common law rules into statutory rules makes their unexcused violation, negligence per se, then every case involving the common law standard of due care would implicate negligence per se. This would be so since the legislature has adopted by statute the common law and its standards of conduct. *Tex. Civ. Prac. & Rem. Code Ann.* § 5.001 (Vernon 1986). We do not believe that the Supreme Court intended such a result. Moreover, since *McFerrin* and *Southern Pacific,* the Supreme Court, in *Moughon,* also stated that negligence per se did not require a finding on the prudence of the actor's conduct (unless evidence of excuse existed). From this, and the numerous intermediate appellate courts which have also considered the question (as cited in the text), it is rather clear that a statutory duty conditioned upon acting unreasonably is not negligence per se.

fused the jury into rendering the verdict it did. That is, though the court asked the jury to determine whether Brown was negligent, it had already instructed the fact finder that a violation of any of the six traffic laws was automatic negligence (negligence in itself). In doing this and by failing to explain to the jurors that a violation of any of the aforementioned statutes depended upon their concluding that Brown acted unreasonably, the court effectively relieved them of having to assess the reasonableness of Brown's conduct. Such an instruction was reasonably calculated to and probably did cause rendition of an improper judgment. *Tex.R.App. P.* 81(b). Accordingly, we sustain point two.

### Points of Error One, Three, and Six

■ Next, Borden's points of error one, three, and six focused upon the conduct of Price. The first concerned Borden's entitlement to a verdict directing that Price was negligent per se and that his negligence was more than 50% of the cause of his injury. The third concerned Price's entitlement to an instruction on legal excuse. And the sixth point encompassed whether the great weight of the evidence contradicted the finding that Price was not negligent per se. Resolution of these issues depends upon whether the evidence illustrated that Price committed an unexcused violation of some standard of conduct mandated by statute or ordinance. *See Restatement (Second) of Torts* § 288A(1) (1965) (stating that an excused violation of a legislative enactment is not negligence); *Impson v. Structural Metals, Inc.,* 487 S.W.2d at 696 (stating the same).

The trial court asked the jurors if the negligence, if any, of Price "proximately caus[ed] the occurrence in question?" Prior thereto, it had instructed them 1) that "[o]ur law provides that no pedestrian shall cross or use freeway lanes of any expressway; and, failure to comply ... is negligence in itself, unless excused," [5] 2) that "[t]he unexcused failure to comply with a legislative enactment

or administrative regulation, defining the standard of care of a reasonable person, is negligence per se or negligence in itself," 3) that

A person may have a legal excuse for violation of a traffic law only if one or more of the following conditions is satisfied ...

(1) The person who fails to comply with the law is confronted by an emergency not due to that person's own conduct;

(2) If compliance with the law would involve a greater risk of harm to that person or others; or

(3) There is some other circumstance making it impossible to comply with the law ...,

and that

[w]hen a person is confronted by an emergency arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part; and which, to a reasonable person, requires immediate action without time for deliberation, that person's conduct in such an emergency is not negligence if, after such an emergency arises, that person acts as a person of ordinary prudence would have acted under the same or similar circumstances. Furthermore, when a person is confronted by a situation where compliance with the law would involve a greater risk of harm to the actor or others, that person's conduct in failing to comply with the law is not negligence, if that person acts as a person of ordinary prudence would have acted under the same or similar circumstances.

Thus, the negligence of which Price was accused involved crossing or using the lanes of an expressway, and the only excuses offered to remove that conduct from the throes of negligence per se were emergency, greater risk of harm to others and impossibility.[6]

■ As expressed in *Impson v. Structural Metals, Inc.,* 487 S.W.2d 694 (Tex.1972), one may excuse the violation of a statutory stan-

---

**5.** This instruction was a reiteration of an Amarillo city ordinance.

**6.** Dispute arose as to whether the question of what constitutes a legal excuse is one of fact or of law. Borden argued that it was one of law and

the court so concluded. It also found, as "a matter of law," that removing a cushion from the highway constituted a legal excuse within the definition of emergency, impossibility, or compliance causing greater risk to others.

dard of conduct by presenting evidence of a legal excuse. Such proof may take various forms, and among other things, the accused may present evidence illustrating that compliance with the statute encompassed a greater risk of harm to the actor *or others* than did noncompliance. *Id.* at 696; *Restatement (Second) of Torts* § 288A(e) (1965). Moreover, in gauging whether a particular situation justifies the claim of excuse, such indicia as the presence of a duty to one or more of those involved, the existence of an emergency, the presence of alternative modes of conduct, the risk of harm posed to the actor or another, and the extent of that harm may be considered. *Restatement (Second) of Torts* § 295, cmts. a, b, & c (1965).

For instance, when a statute requires people to walk facing traffic but, due to the rush hour, complying would pose a greater risk upon the actor than not complying, the statutory violation would be excused, according to the Texas Supreme Court. *Impson v. Structural Metals, Inc.,* 487 S.W.2d at 696; *Restatement (Second) of Torts* § 288 A, cmt. I (1965). Yet, what if the individual proceeded as he did not because of the rush hour traffic but because he spied someone's child about to step into a lane of traffic. He would undoubtedly be incurring some personal risk which could be avoided by simply ignoring the situation; indeed, the law would not necessarily compel him to act. Nevertheless, the risk posed to the child and oncoming drivers (should they attempt to avoid the child) coupled with the situation's character as an emergency would be evidence of excuse justifying non-compliance with the statute.

What if instead of a child it was a rather large inanimate object in the lane, would not an emergency and risk of harm still exist at least to those driving on the thoroughfare? The answer is a simple yes. Indeed, it would smack illogical for the law to forego punishing those who do nothing (assuming they did not create the emergency situation) but punish those who acted in a reasonable manner under dire circumstances.

Here, evidence illustrated 1) that the cushion came to lay on Interstate Highway 40 in the middle of Amarillo through the actions of someone other than Price, 2) that drivers were attempting evasive maneuvers to avoid the obstacle, and 3) that one cushion caused, at the very least, one woman and her children to stop in a lane of traffic on the Interstate. This is evidence of a situation comparable to the examples discussed above, a situation wrought with emergency and potentially grave risk. Though Price could have closed his eyes and left all others to fend for themselves, he did not. Instead, he took on risk to himself to ameliorate the dangerous condition. Though he incurred personal risk in undertaking the task, the risk was not necessarily greater than that confronting others if no one acted. Given this, we cannot fault the trial court for refusing to deny Price a legal excuse and for refusing to hold his conduct negligent per se. Nor can we say that the great weight of the evidence indicated that his arguably nonexistent negligence somehow caused the injuries suffered. In sum, we overrule points one, three and six.

### Point of Error Five

■ In its fifth point, Borden contended that the manner in which the trial court conditioned the jury's answer to question three informed the jury as to the effect of its answers. As a preamble to that question, the court instructed the jury:

If in answer to Question No. 1, you have found that only the negligence of Damon Brown proximately caused the occurrence in question; or, if, in answer to Question No. 2 you have found that 50% or less of the negligence that caused the occurrence in question is attributable to David Price, then answer Question Nos. 3 and 4. Otherwise, *do not answer Question Nos. 3 and 4.*

Furthermore, question three dealt with the amount of damages to be awarded Price as a result of Brown's negligence. Thus, by so conditioning question three, the court "told the jury that ... to award damages, there must be a finding that ... Brown's negligence was the only cause of the occurrence or that ... Price's negligence was 50% or less of the cause," according to Borden. While we agree that the preamble may inform the jury of the effect of its answer, we must, nevertheless, overrule the point.

At one time, an instruction like that at bar would have been impermissible. *See Grasso v. Cannon Ball Motor Freight Lines,* 125 Tex. 154, 81 S.W.2d 482, 487 (1935) (holding that the instruction improperly informed the jurors of the effect of its answers by telling them to answer the question regarding damages "if ... you have answered that the defendant's truck was operated in a negligent manner ... caused the injury to plaintiff, and if you have also answered that the plaintiff was not guilty of negligence, contributing to the accident"). Yet, since *Grasso* issued, the Texas Supreme Court has brought much change to the realm of jury instruction. Broad-form submission is no longer the prohibited course, but, the favored. *Tex.R. Civ. P.* 277. Similarly, the Court also permits its trial brethren to "incidentally ... advise[ ] the jury of the effect of [its] answers when it is properly a part of an instruction or definition." *Id.* So too do the trial courts have authority to "predicate the damage question or questions upon affirmative findings of liability." *Id.*

In applying the foregoing rules to the instruction at bar, we conclude that the preamble was an attempt to predicate the award of damages upon a finding that Brown was liable for the injuries Price suffered. Thus, it was a proper instruction as long as it "incidentally" informed the jurors about the effect of their answers to the questions concerning liability. And, we conclude that the extent to which it so informed the jurors was incidental. *H.E. Butt Grocery Co. v. Bilotto,* 928 S.W.2d 197, 199–200 (Tex.App.—San Antonio 1996, n.w.h.); *H.E. Butt Grocery Co. v. Paez,* 742 S.W.2d 824, 825–26 (Tex.App.—Corpus Christi 1987, writ denied).

### Conclusion

Our disposition of the foregoing points of error relieves us from having to address the remaining points. Accordingly, we reverse the judgment and remand the cause for new trial.