NO. 07-08-0347-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 17, 2010

_____

JAMES RILEY DAVIS, a/k/a J.R. DAVIS,

Appellant

v.

RONALD JORDAN,

Appellee

_____

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 17194; HON. KELLY G. MOORE, PRESIDING

_____

**Opinion**

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

The cause before us involves allegations of over-spraying a herbicide onto a neighboring farmer's watermelon crop. James Riley Davis (Davis) alleged that Ronald Jordan (Jordan) did just that when he used his tractor to apply the herbicide to his cotton crop. Davis' property adjoined that of Jordan, and the contamination was allegedly caused by Jordan spraying the chemical during windy conditions. The jury denied Davis' claims of negligence; so, he appealed. The issues we are asked to

resolve implicate the trial court's jury instructions (or lack thereof), evidentiary rulings, and the sufficiency of the evidence. We affirm.

### Issue One - Negligence Per Se

Davis initially asserts that the trial court erred in refusing to instruct the jury on negligence per se. He was allegedly entitled to the instruction because Jordan's conduct violated §7.71 of Title 4 of the Texas Administrative Code. We overrule the issue.

Section 7.71 of Title 4 states that "[i]t shall be a violation for any person to use or cause to be used a pesticide in a manner inconsistent with its label or labeling." 4 T.A.C. §7.71 (2009). As can be seen, §7.71 applies to pesticides; however, for purposes of this case we assume *arguendo* that the herbicide used by Jordan fell within the ambit of a pesticide. Furthermore, the mandatory nature of the regulation allegedly rendered its violation an instance of negligence *per se.*

Negligence *per se* is a tort concept through which the courts adopt a legislatively imposed standard of conduct as defining the conduct of a reasonably prudent man. *Carter v. William Sommerville & Son, Inc.,* 584 S.W.2d 274, 278 (Tex. 1979); *Borden, Inc. v. Price*, 939 S.W.2d 247, 250 (Tex. App.–Amarillo 1979, writ denied). Implicit within it is the idea that by declaring what the public must do or refrain from doing, the legislature has effectively characterized the commission of the act as conduct which a

2

reasonably prudent person would not do.[1]  *Borden, Inc. v. Price,* 939 S.W.2d at 250; *see* 3 F. Harper, F. James & O. Gray, *The Law of Torts* § 17.6 at 621 (1986).  In other words, a particular act must be involved which the legislature prohibited, and in prohibiting the act, it can be said to have fixed a standard of reasonable care.  *Missouri Pacific R.R. Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex. 1977).  By so prohibiting it, the legislature obviated the need to ask a jury to pass upon the actor's prudence.  *Borden, Inc. v. Price*, 939 S.W.2d at 250.   Instead, the trial court merely has the factfinder decide if the tortfeasor committed the act proscribed by the statute and if the act proximately caused injury.  *Moughon v. Wolf,* 576 S.W.2d 603, 604, nn.*2*-3 (Tex. 1978); *Air Prods. & Chems. v. Odfjell Seachem A/S*, No. 01-08-0591-CV, 2009 Tex. App. Lᴇxɪs 6853 (Tex. App.–Houston [1ˢᵗ Dist.] August 27, 2009, no pet.); *Borden, Inc. v Price*, 939 S.W.2d at 250.  So, if violation of the duty imposed by a statute is dependent upon a jury determining if the act was unreasonable or imprudent, then the statute cannot be one giving rise to negligence *per se*.  *Borden, Inc. v. Price*, 939 S.W.2d at 250; *Cudworth v. South Texas Paisano Const. Co.,* 705 S.W.2d 315, 317 (Tex. Civ. App.–San Antonio 1986, writ ref'd n.r.e.).

---

[1]Though we refer to legislative enactments as its basis, negligence *per se* may also be founded upon an administrative regulation.  *Continental Oil Co. v. Simpson*, 604 S.W.2d 530, 534 (Tex. Civ. App.– Amarillo 1980, writ ref'd n.r.e.).

In the foregoing guidelines we stumble upon the obstacle preventing us from accepting Davis' contention. The obstacle involves the entity imposing the particular restriction that Jordan allegedly breached. The record does not indicate that it was either the Texas Legislature or the Agriculture Commission. Rather, it seems it was the private entity manufacturing or distributing the herbicide in question. That is, Jordan was sued for purportedly spraying a herbicide via an improper manner or under improper conditions which allowed it to drift onto Davis' watermelon crop. Yet, §7.71 of the Administrative Code did and does not itself address or explain the manner or means of applying the product. Instead, it merely made it a "violation" to use a pesticide in a "manner inconsistent with its label or labeling." And, though a use inconsistent with the labeling encompasses "applications at sites, rates, concentrations, intervals or under conditions not specified in the labeled directions," *id.*, the latter itself does not specify any particular rate, site, concentration, interval or condition. Those tasks were apparently left to the discretion of the manufacturer or distributor of the product, *i.e.* Cheminova A/S of Denmark or Cheminova, Inc. of New Jersey. That is problematic for if we were to conclude that deviating from the label's directions and restrictions constituted negligence *per se* we would be effectively authorizing a private (and in this case foreign) corporation to create Texas governmental policy regarding the pertinent standard of care.

Again, negligence *per se* contemplates that the legislature, or possibly an administrative agency, specify the conduct which is to be prohibited. *Missouri Pacific*

*R.R. Co. v. American Statesman, supra.* In so prohibiting the act, it can then be said that the legislature, or possibly an administrative agency, has exercised its judgment in fixing a pertinent, statewide standard of reasonable care regulating its citizenry. *Id.* But, that is not the case here, or at least Davis has not shown otherwise. Adopting appellant's argument is tantamount to acquiescing in the delegation of that governmental authority to Cheminova since it apparently was free to specify the contents of its label.

The wording adopted by Cheminova in its label is also of concern. As described in *Borden*, if the verbiage is conditional or otherwise fails to impose an absolute restriction, the prohibition cannot be the fodder of negligence *per se. Borden, Inc. v. Price*, 939 S.W.2d at 250-51(holding that because the traffic regulation allowed the act if it could be done safely, the prohibition was conditional and not the basis for negligence *per se*). Here, Cheminova wrote "avoid" in its label. Assuming that "avoid" connotes an absolute prohibition, we have no idea of whether the company selected the word with the intent to impose a statewide standard of care. More importantly, if the selection of a label's wording lies within the discretion of the chemical's distributor or manufacturer (again, something that Davis did not address) it may well be that some other manufacturer of an identical product could utilize different wording that has the same connotation but that is less than absolute. For instance, company X may choose to say something like "do not spray in windy conditions unless it can be done safely to avoid damage to neighboring plants." That verbiage is more akin to the language involved in

5

*Borden* and, consequently, unlikely to create an absolute, uniform standard of care. But, both it and the wording on Cheminova's label say basically the same thing, "you shouldn't spray it on plants that you don't want to kill." So, depending upon whether you bought the weed killer from Cheminova or from company X, the user's potential liability could be assessed under different legal standards. The risk of such potential variance is unacceptable.

Simply put, the circumstances at bar (as they appear in this particular record) do not fit within the legal framework of negligence *per se*. Thus, we cannot say that the trial court abused its discretion in refusing to instruct the jury on the topic. *See Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (holding that a trial court does not err when refusing to submit particular jury instructions unless it abuses its discretion).

### Issue Two – Exclusion of Administrative Order, Findings and Notice

Next, Davis contends that the trial court erred in excluding from evidence a notice of violation, findings, and an order issued by the Texas Agriculture Commission. The data allegedly was relevant and within an exception to the hearsay rule. We overrule the issue.

That the evidence was subject to exclusion under Texas Rule of Evidence 403 was one of three grounds proffered by Jordan to prevent its admission. Furthermore, the trial court did not state on what grounds it relied in ruling as it did. This is of import because Davis says nothing of Rule 403 and why its potential application was

unwarranted.[2]  Thus, he did not carry his appellate burden of showing that the trial court erred.

Additionally, a closure letter states that the Commission's investigation "indicate[d] that a violation of Texas pesticide laws *may have caused or contributed* to the effects which" Davis experienced.  (Emphasis added).  Yet, the pertinent evidentiary or legal standard applied by the investigators to arrive at this conclusion or opine about the nexus between the violation and results went unmentioned.  Whether that standard was comparable to the one applicable in a civil case like that at bar (*i.e.* preponderance of the evidence) also went unmentioned.  Indeed, by their using the word "may" one could reasonably argue that the investigators were not applying the "but for" test used to assess causation in negligence cases.  Thus, it would have been within a reasonable jurist's discretion to exclude the notice due to its potential to confuse the jurors about whether a legitimate nexus existed between the misconduct and any ensuing damage purportedly suffered by Davis.

---

[2]We note that despite the lack of reference to Rule 403, Davis did argue in his brief that in excluding the evidence "the jury was left with a false impression" because an investigator with the Agriculture Commission "was allowed to testify that her investigation showed Jordan to 'be in compliance.'"  Whether this was an attempt to address that aspect of Rule 403 concerning evidence that may confuse or mislead the jury is unknown.  Nonetheless, we find the contention misplaced.  When the investigator alluded to Jordan being in compliance, she was referring to an inspection of his records, not the allegation of improperly spraying Davis' crop.  So, to the extent that the order, findings and notice involved the spraying of the crop, we fail to see how their admission was necessary to ameliorate any risk of confusion arising from the investigator's statement.

7

Finally, we note that per the findings alluded to by Davis and found in the Commission's order, the latter arose from a settlement between Jordan and the Commission. Because evidence of settlement agreements is inadmissible under Texas Rule of Evidence 408, it was well within the trial court's discretion to exclude the data.

### Issue Three – Instruction on Act of God

Davis next contends that the trial court erred in submitting to the jury an instruction on act of God. He believed this so because there was no evidence that the act of God in question (*i.e.* 50 mph winds, the lack of humidity, and sandblasting caused by high winds) was the sole cause of the crop's demise. We overrule the issue. Davis' contention is belied by testimony that the watermelon plants were dried and dying before the Roundup could have affected them and that they had recently experienced "severe wind and sand damage" due to a "severe wind and sand storm." So too was there testimony not only that the nominal amount of Roundup found on the plants tested was insufficient to kill them but also that the wind direction at the time of application could not have led to the drift in question. *See McWilliams v. Masterson*, 112 S.W.3d 314, 320 (Tex. App.–Amarillo 2003, pet. denied) (stating that one is not responsible for an act of God and such consists of an event occasioned exclusively by the violence of nature). This is some evidence supporting the trial court's decision to submit the instruction. Thus, it did not abuse its discretion in doing so. *See Castro v. U.S. Natural Resources, Inc.,* 880 S.W.2d 62, 64 (Tex. App.–San Antonio 1994, pet. denied) (stating

8

that a trial court is obligated to submit a defensive instruction if some evidence from any source supports its submission).

### *Issue Four – Admission of Expert Testimony*

Next, Davis argues that the trial court erred in admitting the expert testimony of Dr. Kreig. The latter, allegedly, was not qualified to talk about watermelons, and the experiment or test he described undertaking purportedly was unreliable. We overrule the issue.

Regarding Davis' complaint about the admissibility of Kreig's experiment, we conclude that the issue was not preserved. This is so because he presented this particular complaint via a motion in limine. Yet, it has long been held that one does not preserve evidentiary objections via a motion in limine. *Kaufman v. Commission for Lawyer Discipline,* 197 S.W.3d 867, 873 (Tex. App.–Corpus Christi 2006, pet. denied). Furthermore, when Kreig's reports (*i.e.* the original and its supplement describing the experiment and findings arising therefrom) were tendered to the trial court, Davis apparently stipulated to their admission. That is, he replied, "agreed and stipulated." After being told this, the trial court observed that the "reports are admitted *without objection* . . . ." (Emphasis added). Given these circumstances, we conclude that any complaint regarding the reliability of the experiment and its findings was not preserved, and Davis neither argues otherwise nor proposes any exception to the rule requiring preservation of error.

9

As for the objection regarding Krieg's qualifications, we assume *arguendo* that the matter was preserved and well-founded. Nonetheless, his report was admitted into evidence without objection. Thus, the jury was free to consider it irrespective of whether its author was a qualified expert, and because of that we cannot but find the proposed error to be harmless. In other words, it is rather incongruent to say that the jury should not have been able to hear Kreig's oral comments about his experiment and findings, but it was free to read them via his report. In either situation, they were before the jury.

### Issue Five – Sufficiency of the Evidence

Finally, Davis attacks the factual sufficiency of the evidence. That is, he contends that the jury's verdict rejecting his negligence claim was "against the great weight and preponderance of the evidence." We overrule the issue for it was not preserved. Davis omitted it from a motion for new trial contrary to Texas Rule of Civil Procedure 324(b)(2). *In re M.S.*,115 S.W.3d 534, 547 (Tex. 2003). Nor did he argue or otherwise illustrate through his reply brief that the complaint was preserved.

Jordan proposed a cross-issue for our consideration. However, its consideration was contingent on our sustaining one or more of Davis' issues. Because we overruled each of them, we need not consider the cross-issue. Accordingly, the judgment of the trial court is affirmed.


Brian Quinn
Chief Justice

10