NO. 07-06-0421-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



NOVEMBER 29, 2007


______________________________



LARRY ACKERS, APPELLANT



V.



CITY OF LUBBOCK, APPELLEE


_________________________________



FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2006-533,594; HONORABLE RUBEN REYES, JUDGE


_______________________________




Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

OPINION


 Appellant, Larry Ackers, appeals the trial court's judgment granting appellee's, the
City of Lubbock, Plea to the Jurisdiction and dismissing his claims with prejudice. We
reverse the judgment and remand the case to the trial court.




Background

 According to Ackers's live pleadings, (1) on April 23, 2005, Ackers learned that a youth
basketball game was being played in the gymnasium at his church. At that time, Ackers
was enrolled in a photography class at Texas Tech University and had a pending
assignment to photograph an entertainment event. To complete the assignment, Ackers
attended the game and took pictures of the participants and attendees. Two of the game's
attendees confronted Ackers about his photographing the children. Ackers explained why
he was taking the pictures, but the attendees called the Lubbock Police Department to
report Ackers's activities anyway.

 In response to this call, Lubbock Police Department (LPD) Officer Scott O'Neil was
dispatched to investigate a suspicious person taking photographs of everyone's children
at a basketball game. Following his arrival at the game, O'Neil seized Ackers's film. O'Neil
completed an incident report and the incident was referred to the Juvenile Crimes,
Investigative Division. 

 On May 11, 2005, Ackers went to the police station and met with Assistant Chief of
the LPD, Thomas Esparza. Esparza informed Ackers that the investigation would likely be
closed, but that the information gathered would remain in the police data system. 
Lieutenant Jeremy Brewer of the Juvenile Crimes, Investigative Division, was called into
Ackers's meeting with Esparza. Brewer told Ackers that he had to have permission before
he could take pictures of the children. Brewer's statement was made as an affirmative
statement of LPD policy. 

 On May 17, 2005, Detective Rosanna Langston called Ackers and notified him that
the parents are finally satisfied, that he should have obtained permission before taking the
photos, and that his name will remain on file as an involved party in this incident and would
"show up" if Ackers was stopped for a traffic violation in the future. Ackers was never
charged with a crime as a result of his photographing the basketball game.

 In response to the events described above, Ackers filed suit against the City of
Lubbock requesting 23 declarations, including a declaration that LPD's photography policy
is unconstitutional; equitable relief, including a permanent injunction; and costs and
expenses, including attorney's fees. The City filed a Plea to the Jurisdiction asserting that
it was immune from this suit based on its governmental immunity. The trial court held a
hearing on the City's plea where it heard the arguments of both parties on the jurisdictional
issue. Following the hearing, the trial court signed a judgment sustaining the City's plea
and dismissing Ackers's claims. Ackers requested findings of fact and conclusions of law
and the trial court made findings and conclusions. 

 By four issues, Ackers appeals. By his first issue, Ackers contends that the trial
court erred in sustaining the City's plea to the jurisdiction. By his second issue, Ackers
contends that any evidence considered by the trial court was not disclosed to Ackers. By
his third issue, Ackers contends that the trial court's findings of fact and conclusions of law
are immaterial to the jurisdictional issue. Finally, by his fourth issue, Ackers contends that
there is no evidence to support the trial court's judgment. We will address only Ackers's
first and third issues, as they are the only issues necessary to final disposition of this
appeal. See Tex. R. App. P. 47.1.

Plea to the Jurisdiction

 By his first issue, Ackers contends that the trial court erred in sustaining the City's
Plea to the Jurisdiction as to his claims for declaratory relief, for injunctive relief, and of a
taking under article 1, section 17, of the Texas Constitution. 

 Subject-matter jurisdiction is essential to the authority of a court to decide a case. 
See Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex.1993). A
challenge to whether a court has subject matter jurisdiction may be raised by a plea to the
jurisdiction. Bland Indep. Sch. Dist., 34 S.W.3d at 554. Whether a court has subject
matter jurisdiction over a case is a legal question and, therefore, we review a trial court's
ruling on a plea to the jurisdiction under a de novo standard of review. Mayhew v. Town
of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). 

 A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause
of action without regard to whether the claims asserted have merit. Bland Indep. Sch.
Dist., 34 S.W.3d at 554. The purpose of a dilatory plea is not to force the plaintiff to
preview their case on the merits, but to establish a reason why the merits of the case
should not be reached. Id. As such, we review a ruling on a plea to the jurisdiction by first
examining the claims in the plaintiff's pleadings, taking the facts pled therein as true, to
determine whether those facts support the trial court's jurisdiction. Nueces County, 97
S.W.3d at 213. However, we may also consider evidence submitted that is relevant to the
jurisdictional issue and we must consider this evidence when it is necessary to resolve the
issue of jurisdiction. Bland Indep. Sch. Dist., 34 S.W.3d at 555. 

 When looking at the plaintiff's pleadings, we must construe the pleadings in the
plaintiff's favor and look to the pleader's intent. Nueces County, 97 S.W.3d at 213. The
plaintiff bears the burden to allege facts affirmatively demonstrating the trial court's
jurisdiction to hear the case. Id. If a plaintiff pleads facts that affirmatively demonstrate
the absence of jurisdiction and the defect is incurable, then the case is properly dismissed. 
Id. However, if the plaintiff's pleadings do not demonstrate the trial court's jurisdiction, but
are not affirmatively incurable, the proper remedy is to allow the plaintiff an opportunity to
amend the pleadings before dismissal. Id. See also County of Cameron v. Brown, 80
S.W.3d 549, 555 (Tex. 2002); Peek v. Equip. Serv. Co., 779 S.W.2d 802, 805 (Tex. 1989).

 In the present case, the City, by its plea to the jurisdiction, alleged that Ackers's
claims were barred by the doctrine of governmental immunity. Governmental immunity
protects governmental entities from lawsuits for damages absent legislative consent. 
Nueces County, 97 S.W.3d at 216-17. There are, however, certain exceptions to
governmental immunity. Governmental immunity may be waived by express legislative
permission, such as a resolution granting permission for a person to file suit, or by a
statutory waiver. Id. at 217. Certain provisions of the Texas Constitution are self-enacting
and provide the right to bring suit against a governmental entity for violations of the
provision without the need for legislative consent. Id. Actions that seek to settle
uncertainty and insecurity with respect to rights, status, or other legal relations or that seek
a declaration that officials acted without legal authority or acted in accordance with an
unconstitutional law do not require consent, provided that these suits do not seek money
damages. Id. at 217-18. A plaintiff filing suit against a governmental entity must assert
claims for which immunity has been waived and facts that fall within the scope of that
waiver. See Tex. Dep't of Crim. Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2001); Nueces
County, 97 S.W.3d at 217.

 In the present case, Ackers asserted claims for declaratory relief, injunctive relief,
and equitable relief to compensate him for the taking of his film. As no evidence was
offered that would be necessary to the jurisdictional issue, we will confine our review to
Ackers's pleadings, construing those pleadings in Ackers's favor and looking to his intent. 
Nueces County, 97 S.W.3d at 213. Because we conclude that the trial court had subject
matter jurisdiction over at least one claim asserted by Ackers, we will limit our review to this
claim. See Tex. R. App. P. 47.1.

Ackers's Claim for Declaratory Relief 

 Ackers requested 23 declarations from the trial court. The primary declaration
sought was that any policy or procedure of the City that was used to justify any unlawful
action taken against Ackers be found to be unconstitutional and declared void as a matter
of law. Many of Ackers's requests for declarations seek declarations that the City
committed acts that would make it liable under a number of different causes of action. 
However, Ackers does not specifically request monetary relief for any of these causes of
action.

 As previously mentioned, no consent or waiver of governmental immunity is required
when a suit seeks only a declaration or enforcement of rights. Tex. Natural Res.
Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). A suit under the
Uniform Declaratory Judgment Act or a suit alleging ultra vires acts falls within this
exception. Nueces County, 97 S.W.3d at 217-18. The reason that these suits do not
require consent or waiver of immunity is because they do not seek to subject the
governmental entity to liability. Tex. Natural Res. Conservation Comm'n, 74 S.W.3d at
855. However, when a party brings a suit ostensibly to determine or protect rights but
seeks monetary damages, governmental immunity bars the suit. Id. at 856; Nueces
County, 97 S.W.3d at 218. 

 In the present case, Ackers pled that the City, through its police department, has a
policy requiring that parental permission be obtained before photographs of minors may
be taken. (2) As the City presented no evidence to controvert this allegation, we must accept
the existence of such a policy as true. See Bland Indep. Sch. Dist., 34 S.W.3d at 555;
Nueces County, 97 S.W.3d at 213. The Uniform Declaratory Judgment Act provides, in
part, that, 

A person . . . whose rights, status, or other legal relations are affected by a
statute, municipal ordinance, contract, or franchise may have determined any
question of construction or validity arising under the instrument, statute,
ordinance, contract, or franchise and obtain a declaration of rights, status,
or other legal relations thereunder.


Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (Vernon Supp. 2007). The City contends
that, because Ackers's claim challenges the validity of a policy rather than of an instrument,
statute, ordinance, contract, or franchise, the Uniform Declaratory Judgment Act does not
remove governmental immunity for Ackers's primary claim for declaratory relief and,
therefore, it is barred by governmental immunity.

 While Ackers's challenge of the constitutionality of the City's policy is not specifically
identified in section 37.004(a), we conclude that the failure of the section to specifically list
a city's policy as being capable of challenge by declaratory action does not mean that such
an action is barred by governmental immunity. First, section 37.003(c) provides that the
enumerations in Section 37.004 "do not limit or restrict the exercise of the general powers
conferred by this section in any proceeding in which declaratory relief is sought and a
judgment or decree will terminate the controversy or remove an uncertainty." Tex. Civ.
Prac. & Rem. Code Ann. § 37.003(c) (Vernon 1997). We conclude that the primary
declaration sought by Ackers in the present case will remove uncertainty regarding rights
and will resolve the controversy regarding whether the City's policy is valid. Further,
because Ackers is not requesting monetary damages, but rather is seeking a declaration
that the City's policy is unconstitutional, he does not need an express statutory waiver of
governmental immunity to seek declaratory relief. See Tex. Natural Res. Conservation
Comm'n, 74 S.W.3d at 855. As a result, we conclude that Ackers's request for a
declaration that any policy or procedure of the City that was used to justify any unlawful
action taken against Ackers be found to be unconstitutional and declared void as a matter
of law falls within the scope of the Uniform Declaratory Judgment Act. However, because
this request for declaratory relief does not seek to impose liability on the City, an express
statutory waiver of governmental immunity is not required for the trial court's exercise of
subject matter jurisdiction.

 The City argues that Ackers's Discovery Control Plan allegation that the suit involves
a defendant who is likely to be liable in an amount in excess of $50,000 establishes that
his claims are actually claims for monetary damages and are, therefore, barred by the
doctrine of governmental immunity. However, in his live pleading, Ackers makes a claim
that would entitle him to monetary damages. The Texas Constitution permits a party to
seek equitable relief in the form of adequate compensation for a governmental taking of
their property. See Tex. Const. art. I, sec. 17; City of Beaumont v. Bouillion, 896 S.W.2d
143, 149 (Tex. 1995). Because Ackers's live pleading includes a taking claim, for which
monetary damages may be awarded, we do not construe his primary request for
declaratory judgment to be a veiled claim for monetary damages.

 However, even were we to construe Ackers's primary request for declaratory relief
to request monetary damages, the trial court should not have dismissed his case without
first giving Ackers an opportunity to amend his pleadings. See Fryman v. Wilbarger Gen.
Hosp., 207 S.W.3d 440, 442 (Tex.App.-Amarillo 2006, no pet. h.). The record does not
reflect that Ackers was afforded an opportunity to amend his pleadings before the trial
court dismissed his case with prejudice. Thus, even if the construction of Ackers's
pleading that is advanced by the City were accepted, Ackers could amend his pleading to
remove the assertion that the defendant will likely be liable in excess of $50,000 from his
identification of the Discovery Control Plan. 

Findings of Fact and Conclusions of Law

 By his third issue, Ackers contends that the trial court's findings of fact and
conclusions of law relate solely to the merits of the suit and, therefore, are immaterial to
a determination of whether the trial court has subject matter jurisdiction over Ackers's suit. 
The trial court made factual findings that the LPD officers involved in this matter "were
acting within the scope of their official duties as city police officers during the investigation"
and that the actions of the officers were "proper and lawful as a response to keep the
peace." The trial court made conclusions of law that the City "is immune from liability" in
this case, the City is "immune from liability for the actions of its peace officers" in this case,
and Ackers "demonstrated no waiver" of the City's immunity. 

 Based on the scope of our review of a ruling on a plea to the jurisdiction, we
conclude that the trial court's findings of fact are not supported by evidence or Ackers's
pleading and relate to the merits of the case rather than to the trial court's authority to hear
the case. The scope of our review of a ruling on a plea to the jurisdiction is limited to the
claims in the plaintiff's pleadings, taking the facts pled therein as true, to determine
whether those facts support the trial court's jurisdiction. Nueces County, 97 S.W.3d at 213. 
Evidence submitted that is necessary to resolve the issue of jurisdiction must also be
considered. Bland Indep. Sch. Dist., 34 S.W.3d at 555. In the present case, no evidence
necessary to resolution of the jurisdictional issue was submitted. Thus, our review of the
jurisdictional issue is limited to the allegations made in Ackers's live pleading. Nowhere
does Ackers allege facts that would support the trial court's factual findings that the LPD
officers were acting within the scope of their official duties during the investigation of the
present matter. Further, Ackers makes no allegation that the reason that the officers
became involved in this matter was because they received a "request to keep the peace." 
Consequently, we see no support in the record before us for either of the trial court's
findings of fact. Further, we note that the trial court's findings go to the merits of Ackers's
claims and are, therefore, immaterial to a ruling on a plea to the jurisdiction. Bland Indep.
Sch. Dist., 34 S.W.3d at 554. 

 As to the trial court's conclusions of law, each is subject to de novo review by this
court. Mayhew, 964 S.W.2d at 928. As addressed in regard to Ackers's first issue, Ackers
may bring certain declaratory judgment actions against a governmental entity without
express legislative consent or statutory waiver of immunity. Nueces County, 97 S.W.3d
at 217-18. Because Ackers pled a claim for declaratory judgment that we construe as not
requesting monetary damages, the City is not immune from the suit and the trial court's
dismissal was in error. (3)

Conclusion

 For the foregoing reasons, we reverse the trial court's judgment and remand for
further proceedings consistent with this opinion.


 Mackey K. Hancock

 Justice




1. In review of a trial court's ruling on a plea to the jurisdiction, we must take all
factual allegations pled as true, unless jurisdictionally relevant evidence was offered that
negates jurisdiction. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000);
Nueces County v. Ferguson, 97 S.W.3d 205, 213 (Tex.App.-Corpus Christi 2002, no pet.). 
All facts recited in this opinion are from Ackers's live pleading unless otherwise noted.
2. We note that Texas Penal Code section 21.15 makes it an offense to photograph
another without the person's consent and with intent to arouse or gratify the sexual desire
of any person. See Tex. Pen. Code Ann. § 21.15(b) (Vernon Supp. 2007). The City's
policy, as alleged by Ackers, removes the mens rea element of this offense. Thus,
Ackers's pleading is not challenging the validity of section 21.15 nor is the City's policy
authorized by this section.
3. We note that the trial court's conclusions of law specifically reference the City's
immunity from liability. For a declaratory judgment action to avoid the bar of governmental
immunity, it may not seek monetary damages. Tex. Natural Res. Conservation Comm'n,
74 S.W.3d at 855; Nueces County, 97 S.W.3d at 218. As a result, our analysis of Ackers's
primary declaratory judgment claim establishes only that the City is not immune from suit
and does not negate the court's conclusion that the City is immune from liability. However,
Ackers's claim for adequate compensation for a governmental taking does implicate the
court's conclusions.


no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:3.0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.11, li.11, div.11
 {mso-style-name:_11;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:3.5in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.10, li.10, div.10
 {mso-style-name:_10;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:4.0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.Level9, li.Level9, div.Level9
 {mso-style-name:"Level 9";
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:none;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 font-weight:bold;}
p.26, li.26, div.26
 {mso-style-name:_26;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:none;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.25, li.25, div.25
 {mso-style-name:_25;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:1.0in;
 text-indent:-.5in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.24, li.24, div.24
 {mso-style-name:_24;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:1.5in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.23, li.23, div.23
 {mso-style-name:_23;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:2.0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.22, li.22, div.22
 {mso-style-name:_22;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:2.5in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.21, li.21, div.21
 {mso-style-name:_21;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:3.0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.20, li.20, div.20
 {mso-style-name:_20;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:3.5in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.19, li.19, div.19
 {mso-style-name:_19;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:4.0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.18, li.18, div.18
 {mso-style-name:_18;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:4.5in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.9, li.9, div.9
 {mso-style-name:_9;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:4.5in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.8, li.8, div.8
 {mso-style-name:_8;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:0in .5in 1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.7, li.7, div.7
 {mso-style-name:_7;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:1.0in;
 text-indent:-.5in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.6, li.6, div.6
 {mso-style-name:_6;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:1.5in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.5, li.5, div.5
 {mso-style-name:_5;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:2.0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.4, li.4, div.4
 {mso-style-name:_4;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:2.5in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.3, li.3, div.3
 {mso-style-name:_3;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:3.0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.2, li.2, div.2
 {mso-style-name:_2;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:3.5in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.1, li.1, div.1
 {mso-style-name:_1;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:4.0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.a, li.a, div.a
 {mso-style-name:_;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:4.5in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.WPNormal, li.WPNormal, div.WPNormal
 {mso-style-name:WP_Normal;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:0in .5in 1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.DefinitionT, li.DefinitionT, div.DefinitionT
 {mso-style-name:"Definition T";
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:0in .5in 1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.DefinitionL, li.DefinitionL, div.DefinitionL
 {mso-style-name:"Definition L";
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.25in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:.25in .5in 1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
span.Definition
 {mso-style-name:Definition;
 mso-style-unhide:no;
 font-style:italic;
 mso-bidi-font-style:normal;}
p.H1, li.H1, div.H1
 {mso-style-name:H1;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:0in .5in 1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:24.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 font-weight:bold;}
p.H2, li.H2, div.H2
 {mso-style-name:H2;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:0in .5in 1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:18.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 font-weight:bold;}
p.H3, li.H3, div.H3
 {mso-style-name:H3;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:0in .5in 1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:14.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 font-weight:bold;}
p.H4, li.H4, div.H4
 {mso-style-name:H4;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:0in .5in 1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 font-weight:bold;}
p.H5, li.H5, div.H5
 {mso-style-name:H5;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:0in .5in 1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:10.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 font-weight:bold;}
p.H6, li.H6, div.H6
 {mso-style-name:H6;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:0in .5in 1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:8.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 font-weight:bold;}
p.Address, li.Address, div.Address
 {mso-style-name:Address;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:0in .5in 1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;
 font-style:italic;
 mso-bidi-font-style:normal;}
p.Blockquote, li.Blockquote, div.Blockquote
 {mso-style-name:Blockquote;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:.25in;
 margin-bottom:10.0pt;
 margin-left:.25in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:.25in .5in 1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
span.CITE
 {mso-style-name:CITE;
 mso-style-unhide:no;
 font-style:italic;
 mso-bidi-font-style:normal;}
span.CODE
 {mso-style-name:CODE;
 mso-style-unhide:no;
 mso-ansi-font-size:10.0pt;
 font-family:"Courier New";
 mso-ascii-font-family:"Courier New";
 mso-hansi-font-family:"Courier New";}
span.WPEmphasis
 {mso-style-name:WP_Emphasis;
 mso-style-unhide:no;
 font-style:italic;
 mso-bidi-font-style:normal;}
span.WPHyperlink
 {mso-style-name:WP_Hyperlink;
 mso-style-unhide:no;
 color:blue;
 text-decoration:underline;
 text-underline:single;}
span.FollowedHype
 {mso-style-name:FollowedHype;
 mso-style-unhide:no;
 color:purple;
 text-decoration:underline;
 text-underline:single;}
span.Keyboard
 {mso-style-name:Keyboard;
 mso-style-unhide:no;
 mso-ansi-font-size:10.0pt;
 font-family:"Courier New";
 mso-ascii-font-family:"Courier New";
 mso-hansi-font-family:"Courier New";
 font-weight:bold;
 mso-bidi-font-weight:normal;}
p.Preformatted, li.Preformatted, div.Preformatted
 {mso-style-name:Preformatted;
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:none;
 tab-stops:0in 47.95pt 95.9pt 143.8pt 191.75pt 239.7pt 287.7pt 335.65pt 383.6pt 431.5pt 467.8pt;
 font-size:10.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Courier New";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-family:Arial;
 mso-bidi-font-weight:bold;}
p.zBottomof, li.zBottomof, div.zBottomof
 {mso-style-name:"zBottom of ";
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 text-align:center;
 line-height:115%;
 mso-pagination:none;
 tab-stops:0in .5in 1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 border:none;
 mso-border-top-alt:double black .75pt;
 padding:0in;
 mso-padding-alt:0in 0in 0in 0in;
 font-size:8.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
p.zTopofFor, li.zTopofFor, div.zTopofFor
 {mso-style-name:"zTop of For";
 mso-style-unhide:no;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 text-align:center;
 line-height:115%;
 mso-pagination:none;
 tab-stops:0in .5in 1.0in 1.5in 2.0in 2.5in 3.0in 3.5in 4.0in 4.5in 5.0in 5.5in 6.0in;
 border:none;
 mso-border-bottom-alt:double black .75pt;
 padding:0in;
 mso-padding-alt:0in 0in 0in 0in;
 font-size:8.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-bidi-font-weight:bold;}
span.Sample
 {mso-style-name:Sample;
 mso-style-unhide:no;
 font-family:"Courier New";
 mso-ascii-font-family:"Courier New";
 mso-hansi-font-family:"Courier New";}
span.WPStrong
 {mso-style-name:WP_Strong;
 mso-style-unhide:no;
 font-weight:bold;
 mso-bidi-font-weight:normal;}
span.Typewriter
 {mso-style-name:Typewriter;
 mso-style-unhide:no;
 mso-ansi-font-size:10.0pt;
 font-family:"Courier New";
 mso-ascii-font-family:"Courier New";
 mso-hansi-font-family:"Courier New";}
span.Variable
 {mso-style-name:Variable;
 mso-style-unhide:no;
 font-style:italic;
 mso-bidi-font-style:normal;}
span.HTMLMarkup
 {mso-style-name:"HTML Markup";
 mso-style-unhide:no;
 color:red;
 display:none;
 mso-hide:all;}
span.Comment
 {mso-style-name:Comment;
 mso-style-unhide:no;
 display:none;
 mso-hide:all;}
span.SYSHYPERTEXT
 {mso-style-name:SYS_HYPERTEXT;
 mso-style-unhide:no;
 color:blue;
 text-decoration:underline;
 text-underline:single;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-font-weight:bold;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-font-weight:bold;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Calibri;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("07-08-0347.cv%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-08-0347.cv%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-08-0347.cv%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-08-0347.cv%20opinion_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-title-page:yes;
 mso-even-header:url("07-08-0347.cv%20opinion_files/header.htm") eh1;
 mso-header:url("07-08-0347.cv%20opinion_files/header.htm") h1;
 mso-even-footer:url("07-08-0347.cv%20opinion_files/header.htm") ef1;
 mso-footer:url("07-08-0347.cv%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:1.1in 1.0in .8in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-title-page:yes;
 mso-even-header:url("07-08-0347.cv%20opinion_files/header.htm") eh1;
 mso-header:url("07-08-0347.cv%20opinion_files/header.htm") h1;
 mso-even-footer:url("07-08-0347.cv%20opinion_files/header.htm") ef1;
 mso-footer:url("07-08-0347.cv%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
-->








                                                            NO. 07-08-0347-CV

                                                   IN
THE COURT OF APPEALS

                                       FOR
THE SEVENTH DISTRICT OF TEXAS

                                                                 AT
AMARILLO

                                                                      PANEL
B

                                                           FEBRUARY
17, 2010           ______________________________

 

                                          JAMES RILEY DAVIS, a/k/a J.R. DAVIS,

                                                                                                            Appellant

                                                                             v.

 

                                                            RONALD JORDAN, 

                                                                                                            Appellee

_______________________________

                         FROM
THE 121ST DISTRICT COURT OF TERRY COUNTY;

                                 NO.
17194; HON. KELLY G. MOORE, PRESIDING

                                            ______________________________

                                                                       Opinion           ______________________________

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

            The cause before us involves
allegations of over-spraying a herbicide onto a
neighboring farmers watermelon crop. 
James Riley Davis (Davis) alleged that Ronald Jordan (Jordan) did just
that when he used his tractor to apply the herbicide to his cotton crop.  Davis property adjoined that of Jordan, and
the contamination was allegedly caused by Jordan spraying the chemical during
windy conditions.  The jury denied Davis
claims of negligence; so, he appealed. 
The issues we are asked to resolve implicate the trial courts jury
instructions (or lack thereof), evidentiary rulings, and the sufficiency of the
evidence.  We affirm.  

Issue One - Negligence Per Se

            Davis initially asserts
that the trial court erred in refusing to instruct the jury on negligence per
se.  He was allegedly entitled to the
instruction because Jordans conduct violated §7.71 of Title 4 of the Texas
Administrative Code.   We overrule the
issue.   

            Section 7.71 of Title 4
states that [i]t shall be a violation for any person to use or cause to be
used a pesticide in a manner inconsistent with its label or labeling. 4 T.A.C. §7.71 (2009). 
As can be seen, §7.71 applies to pesticides; however, for purposes of
this case we assume arguendo that the
herbicide used by Jordan fell within the ambit of a pesticide.  Furthermore, the mandatory nature of the
regulation allegedly rendered its violation an instance of negligence per se.  


            Negligence
per se is a tort concept through
which the courts adopt a legislatively imposed standard of conduct as defining
the conduct of a reasonably prudent man. 
Carter v.
William Sommerville & Son, Inc., 584 S.W.2d 274, 278 (Tex. 1979); Borden, Inc. v. Price, 939 S.W.2d 247,
250 (Tex. App.Amarillo 1979, writ denied).  Implicit within it is the idea that by
declaring what the public must do or refrain from doing, the
legislature has effectively characterized the commission of the act as conduct
which a reasonably prudent person would not do.[1]  Borden, Inc. v. Price, 939 S.W.2d at 250; see 3 F. Harper, F. James & O. Gray, The Law of Torts § 17.6 at 621 (1986).  In other words, a particular act must be
involved which the legislature prohibited, and in prohibiting the act, it can
be said to have fixed a standard of reasonable care.  Missouri Pacific R.R. Co. v.
American Statesman, 552 S.W.2d 99, 103 (Tex. 1977).  

By so
prohibiting it, the legislature obviated the need to ask a jury to pass upon
the actor's prudence.  Borden, Inc. v. Price, \\7TH-TAMES\research\buttonTFLink?_m=8b257740616d3233b694bcfc19df4586&_xfercite=<cite
cc="USA"><![CDATA[939 S.W.2d 247]]><\cite>&_butType=3&_butStat=2&_butNum=29&_butInline=1&_butinfo=<cite
cc="USA"><![CDATA[119 \\7TH-TAMES\research\buttonTFLink?_m=8b257740616d3233b694bcfc19df4586&_xfercite=<cite
cc="USA"><![CDATA[939 S.W.2d
247]]><\cite>&_butType=3&_butStat=2&_butNum=30&_butInline=1&_butinfo=<cite
cc="USA"><![CDATA[129 939 S.W.2d at 250.   Instead, the trial court merely has the factfinder
decide if the tortfeasor committed the act proscribed by the statute and if the
act proximately caused injury.  Moughon v. Wolf, 576 S.W.2d 603, 604, nn.2-3 (Tex. 1978); Air Prods. & Chems. v. Odfjell Seachem A/S, No. 01-08-0591-CV, 2009 Tex.
App. Lexis 6853 (Tex. App.Houston
[1st Dist.] August 27, 2009, no pet.); Borden, Inc. v Price, 939 S.W.2d at 250.  So, if violation of the duty imposed by a
statute is dependent upon a jury determining if the act was unreasonable or
imprudent, then the statute cannot be one giving rise to negligence per se. 
Borden, Inc. v.
Price, 939 S.W.2d at 250; Cudworth v.
South Texas Paisano Const. Co., 705 S.W.2d 315, 317
(Tex. Civ. App.San Antonio 1986, writ ref'd n.r.e.).  

            In the foregoing guidelines we stumble upon the obstacle
preventing us from accepting Davis contention. 
The obstacle involves the entity imposing the particular restriction that
Jordan allegedly breached.  The record
does not indicate that it was either the Texas Legislature or the Agriculture
Commission.  Rather, it seems it was the private
entity manufacturing or distributing the herbicide in question.  That is, Jordan was sued for purportedly
spraying a herbicide via an improper manner or under
improper conditions which allowed it to drift onto Davis watermelon crop.  Yet, §7.71 of the Administrative Code did and
does not itself address or explain the manner or means of applying the
product.  Instead, it merely made it a
violation to use a pesticide in a manner inconsistent with its label or
labeling.  And, though a use
inconsistent with the labeling encompasses applications at sites, rates,
concentrations, intervals or under conditions not specified in the labeled
directions, id., the latter itself
does not specify any particular rate, site, concentration, interval or
condition.  Those tasks were apparently
left to the discretion of the manufacturer or distributor of the product, i.e. Cheminova A/S of Denmark or
Cheminova, Inc. of New Jersey.  That is
problematic for if we were to conclude that deviating from the labels
directions and restrictions constituted negligence per se we would be effectively authorizing a private (and in this
case foreign) corporation to create Texas governmental policy regarding the
pertinent standard of care.  

            Again,
negligence per se contemplates that
the legislature, or possibly an administrative agency,
specify the conduct which is to be prohibited.  Missouri
Pacific R.R. Co. v. American Statesman, supra.  In so prohibiting the act, it can then be
said that the legislature, or possibly an administrative agency, has exercised
its judgment in fixing a pertinent, statewide standard of reasonable care
regulating its citizenry.  Id. 
But, that is not the case here, or at least Davis has not shown
otherwise.  Adopting appellants argument
is tantamount to acquiescing in the delegation of that governmental authority
to Cheminova since it apparently was free to specify the contents of its label.

            The wording adopted by
Cheminova in its label is also of concern. 
As described in Borden, if the
verbiage is conditional or otherwise fails to impose an absolute restriction,
the prohibition cannot be the fodder of negligence per se.  Borden, Inc. v. Price, 939 S.W.2d at 250-51(holding that because
the traffic regulation allowed the act if it could be done safely, the
prohibition was conditional and not the basis for negligence per se). 
Here, Cheminova wrote avoid in its label.  Assuming that avoid connotes an absolute
prohibition, we have no idea of whether the company selected the word with the intent
to impose a statewide standard of care.  
More importantly, if the selection of a labels wording lies within the
discretion of the chemicals distributor or manufacturer (again, something that
Davis did not address) it may well be that some other manufacturer of an
identical product could utilize different wording that has the same connotation
but that is less than absolute.   For
instance, company X may choose to say something like do not spray in windy
conditions unless it can be done safely to avoid damage to neighboring
plants.   That verbiage is more akin to
the language involved in Borden and,
consequently, unlikely to create an absolute, uniform standard of care.  But, both it and the wording on Cheminovas
label say basically the same thing, you shouldnt spray it on plants that you
dont want to kill.  So, depending upon
whether you 








bought the weed killer from Cheminova
or from company X, the users potential liability could be assessed under
different legal standards.  The risk of
such potential variance is unacceptable.   
 

            Simply
put, the circumstances at bar (as they appear in this particular record) do not
fit within the legal framework of negligence per se.  Thus, we cannot say
that the trial court abused its discretion in refusing to instruct the jury on
the topic.  See Shupe v. Lingafelter,
192 S.W.3d 577, 579 (Tex. 2006) (holding that a trial court does not err when
refusing to submit particular jury instructions unless it abuses its
discretion).        

            Issue Two  Exclusion of Administrative
Order, Findings and Notice

            Next, Davis contends that the trial court erred in
excluding from evidence a notice of violation, findings, and an order issued by
the Texas Agriculture Commission.  The
data allegedly was relevant and within an exception to the hearsay rule.  We overrule the issue.

            That
the evidence was subject to exclusion under Texas Rule of Evidence 403 was one
of three grounds proffered by Jordan to prevent its admission.  Furthermore, the trial court did not state on
what grounds it relied in ruling as it did. 
This is of import because Davis says nothing of Rule 403 and why its
potential application was unwarranted.[2]  Thus, he did not carry his appellate burden
of showing that the trial court erred. 

            Additionally, a closure letter states that the
Commissions investigation indicate[d] that a violation of Texas pesticide
laws may have caused or contributed
to the effects which Davis experienced. 
(Emphasis added).  Yet, the
pertinent evidentiary or legal standard applied by the investigators to arrive
at this conclusion or opine about the nexus between the violation and results
went unmentioned.  Whether that standard
was comparable to the one applicable in a civil case like that at bar (i.e. preponderance of the evidence) also
went unmentioned.  Indeed, by their using
the word may one could reasonably argue that the investigators were not
applying the but for test used to assess causation in negligence cases.  Thus, it would have been within a reasonable
jurists discretion to exclude the notice due to its potential to confuse the
jurors about whether a legitimate nexus existed between the misconduct and any
ensuing damage purportedly suffered by Davis. 


            Finally, we note that per the
findings alluded to by Davis and found in the Commissions order, the latter
arose from a settlement between Jordan and the Commission.  Because evidence of settlement agreements is
inadmissible under Texas Rule of Evidence 408, it was well within the trial
courts discretion to exclude the data.   


Issue Three  Instruction on
Act of God

            Davis
next contends that the trial court erred in submitting to the jury an instruction
on act of God.  He believed this so
because there was no evidence that the act of God in question (i.e. 50 mph winds, the lack of humidity,
and sandblasting caused by high winds) was the sole cause of the crops
demise.  We overrule the issue.        Davis contention is belied by testimony
that the watermelon plants were dried and dying before the Roundup could have affected
them and that they had recently experienced severe wind and sand damage due
to a severe wind and sand storm.  So
too was there testimony not only that the nominal amount of Roundup found on
the plants tested was insufficient to kill them but also that the wind
direction at the time of application could not have led to the drift in
question.  See McWilliams v. Masterson, 112 S.W.3d 314, 320 (Tex.
App.Amarillo 2003, pet. denied) (stating that one is not responsible for an act
of God and such consists of an event occasioned exclusively by the violence of
nature). This is some evidence supporting the trial courts decision to submit
the instruction.  Thus, it did not abuse
its discretion in doing so.  See Castro v. U.S. Natural Resources, Inc., 880
S.W.2d 62, 64 (Tex. App.San Antonio 1994, pet. denied) (stating that a trial
court is obligated to submit a defensive instruction if some evidence from any
source supports its submission).

Issue Four  Admission of
Expert Testimony

            Next, Davis argues that the trial court erred in
admitting the expert testimony of Dr. Kreig. 
The latter, allegedly, was not qualified to talk about watermelons, and the experiment or test he described
undertaking purportedly was unreliable. 
We overrule the issue.  

            Regarding Davis complaint about the admissibility of
Kreigs experiment, we conclude that the issue was not preserved.  This is so because he presented this
particular complaint via a motion in limine. 
Yet, it has long been held that one does not preserve evidentiary
objections via a motion in limine. Kaufman v. Commission for Lawyer Discipline, 197 S.W.3d 867, 873
(Tex. App.Corpus Christi 2006, pet. denied).  Furthermore, when Kreigs reports (i.e. the original and its supplement
describing the experiment and findings arising therefrom) were tendered to the
trial court, Davis apparently stipulated to their admission.  That is, he replied, agreed
and stipulated.    After being told this,
the trial court observed that the reports are admitted without objection . . . . 
(Emphasis added).  Given these
circumstances, we conclude that any complaint regarding the reliability of the
experiment and its findings was not preserved, and Davis neither argues
otherwise nor proposes any exception to the rule requiring preservation of
error.    

     

            As for the objection regarding Kriegs qualifications, we
assume arguendo that the matter was
preserved and well-founded.  Nonetheless,
his report was admitted into evidence without objection.  Thus, the jury was free to consider it
irrespective of whether its author was a qualified expert, and because of that
we cannot but find the proposed error to be harmless.  In other words, it is rather incongruent to
say that the jury should not have been able to hear Kreigs oral comments about
his experiment and findings, but it was free to read them via his report.  In either situation, they were before the
jury.

Issue Five  Sufficiency of the Evidence

            Finally,
Davis attacks the factual sufficiency of the evidence.  That is, he contends that the jurys verdict
rejecting his negligence claim was against the great weight and preponderance
of the evidence.  We overrule the issue
for it was not preserved.  Davis omitted
it from a motion for new trial contrary to Texas Rule of Civil Procedure 324(b)(2).  In re M.S.,115
S.W.3d 534, 547 (Tex. 2003).  Nor did he
argue or otherwise illustrate through his reply brief that the complaint was
preserved.

            Jordan proposed a cross-issue for our consideration.  However, its consideration was contingent on
our sustaining one or more of Davis issues. 
Because we overruled each of them, we need not consider the
cross-issue.  Accordingly, the judgment
of the trial court is affirmed.

 

                                                                                    Brian
Quinn

                                                                                    Chief
Justice                        

             











[1]Though we refer to legislative
enactments as its basis, negligence per
se may also be founded upon an administrative regulation.  Continental Oil Co. v. Simpson, 604 S.W.2d 530, 534 (Tex. Civ. App.Amarillo
1980, writ refd n.r.e.).





[2]We note that despite the
lack of reference to Rule 403, Davis did argue in his brief that in excluding
the evidence the jury was left with a false impression because an investigator
with the Agriculture Commission was allowed to testify that her investigation
showed Jordan to be in compliance. 
Whether this was an attempt to address that aspect of Rule 403
concerning evidence that may confuse or mislead the jury is unknown.  Nonetheless, we find the contention
misplaced.  When the investigator alluded
to Jordan being in compliance, she was referring to an inspection of his
records, not the allegation of improperly spraying Davis crop.  So, to the extent that the order, findings and
notice involved the spraying of the crop, we fail to see how their admission
was necessary to ameliorate any risk of confusion arising from the
investigators statement.